**ACE PROPERTY & CASUALTY INSURANCE COMPANY, et al., Plaintiffs,**

v.

**FEDERAL CROP INSURANCE CORPORATION and RISK MANAGEMENT AGENCY, Defendants.**

No. 1:04–cv–40036.

United States District Court,
S.D. Iowa,
Western Division.

Feb. 10, 2005.

Wade R. Hauser, III, Ahlers & Cooney PC, Des Moines, IA, Michael J. Davenport, Rain & Hail LLC General Counsel, Johnston, IA, for Plaintiffs.

## ORDER

GRITZNER, District Judge.

·This matter is before the Court on Plaintiffs' Motion for Partial Summary Judgment and Defendants' Motion to Dismiss. Hearing was held on the motions on December 20, 2004. Attorneys Michael Tucci, Wade Houser, P. John Owen, and Michael Davenport appeared for Plaintiffs. Attorneys Jane Vanneman and Gary Hayward appeared for Defendants. The matter is now fully submitted for review. For the reasons discussed below, Plaintiffs' Motion for Partial Summary Judgment is **denied**. Defendants' Motion to Dismiss is **granted**.

## SUMMARY OF MATERIAL FACTS

Plaintiffs are various insurers who sell and service crop insurance under the federal crop insurance program.[1] Plaintiffs claim damages arising from an alleged breach of contract by the Federal Crop Insurance Corporation ("FCIC") of the Standard Reinsurance Agreement ("SRA"), a contract between the FCIC and each Plaintiff insurer which Plaintiffs assert is a written, binding contract in continuous effect since July 1, 1997. Plaintiffs argue that the SRA was breached following the passage of two congressional acts that mandated changes to the terms of the SRA, thereby causing substantial fiscal damage to the insurers.

---

1. Plaintiffs are as follows: Ace Property and Casualty Insurance Company; Alliance Insurance Companies; American Agricultural Insurance Company, American Growers Insurance Company, *In rehabilitation;* Country Mutual Insurance Company; Farm Bureau Mutual Insurance Co., *of Iowa;* Farmers Alliance Mutual Insurance Company; . Great American Insurance Company, Hartford Fire Insurance Company; NAU Country Insurance Company; Producers Lloyds Insurance Company; Rural Community Insurance Company; and Farmers Mutual Hail Insurance Company of Iowa (collectively, "Plaintiffs").

The Federal Crop Insurance Act, 7 U.S.C. § 1501 ("FCIA"), was passed by Congress in 1938 "to promote the national welfare by improving the economic stability of agriculture through a sound system of crop insurance and providing the means for the research and experience helpful in devising and establishing such insurance." 7 U.S.C. § 1502(a). The FCIC was created to carry out the purposes of the FCIA. 7 U.S.C. § 1503. The FCIC is an agency of and within the United States Department of Agriculture.

In order to protect agricultural producers from the full extent of their losses arising from drought, flood, or other natural disasters causing losses in yield from insured crops, the FCIC is required to offer catastrophic risk protection insurance ("CAT"). 7 U.S.C. § 1508(b)(1). Instead of writing CAT coverage as a direct insurer for the 1998 through 2000 reinsurance years, the FCIC reinsured approved insurance providers, who wrote CAT coverage and serviced all CAT policies. Each Plaintiff is an approved insurance provider as defined by the FCIA that writes CAT and other federal crop insurance coverages approved by the FCIC.

Under the SRA, the FCIC offers federal crop insurance through private insurance companies. Each Plaintiff entered into a reinsurance contract with Defendants via the 1998 SRA, which was effective as of July 1, 1997.[2] When the 1998 SRA was executed by the FCIC and each Plaintiff, the FCIA required insured policy holders to pay an administrative fee for CAT coverage.

Producers shall pay an administrative fee for catastrophic risk protection. The administrative fee for each producer shall be $50 per crop per county, but not to exceed $200 per producer per county up to a maximum of $600 per producer for all counties in which a producer has insured crops. The administrative fee shall be paid by the producer at the time the producer applies for catastrophic risk protection.

7 U.S.C. § 1508(b)(5)(A) (1997).

In 1998, the Agricultural Research, Extension and Education Reform Act of 1998 ("AREERA") was signed into law by President Clinton. Section 532 of AREERA amended 7 U.S.C. § 1508(b) by striking paragraph (5), which had granted the insurers and other approved insurance providers the right to retain CAT administrative fees as compensation for selling and servicing CAT policies, and substituted a new paragraph (5) in 7 U.S.C. § 1508(b), which deprived the insurers of this compensation and instead directed deposit of all CAT administrative fees in FCIC's crop insurance fund. The AREERA amendments to the FCIA reduced the level of CAT loss adjustment expenses payable to approved insurance providers from approximately fourteen percent to eleven percent of an imputed CAT premium. On June 30, 1998, Defendants sent Plaintiffs an FCIC Bulletin which addressed the changes brought about by AREERA and labeled the changes as Amendment No. 1 to the 1998 SRA. The Bulletin provided a description of the amendments, and stated the amendments were effective for the next (1999) reinsurance year and that the failure of an insurer to execute the amendment would terminate the SRA as of June 30, 1998, the end of the 1998 reinsurance year. Plaintiffs state that they each executed the unilaterally imposed Amendment 1 with a reservation of rights to seek compensation under the SRA.

Similarly, the Agricultural Risk Protection Act of 2000 ("ARPA") was passed by Congress and signed into law by President Clinton on June 20, 2000. The ARPA amended the recently added 7 U.S.C.

---

**2.** A reinsurance year runs from July 1 through June 30 of the following year.

§ 1508(b)(11) to reduce further the level of loss adjustment expenses payable to approved insurance providers under the FCIA from eleven percent to eight percent. The changes were embodied in Amendment 3 to the 1998 SRA, and on June 29, 2000, Defendants sent a Bulletin to Plaintiffs describing the amendments, stating that the amendment must be executed and returned by June 30, 2000, in order for the FCIC to provide reinsurance and subsidy in the 2001 and subsequent reinsurance years. Plaintiffs state that they executed the unilaterally imposed Amendment 3 with a reservation of rights to seek compensation under the SRA.

On February 27, 2003, Plaintiffs filed a Complaint in the Court of Federal Claims, asserting claims for breach of contract (count one) and unjust enrichment (count two). *Ace Property & Cas. Ins. Co. v. United States*, 60 Fed.Cl. 175 (Fed.Cl. 2004). The Court of Federal Claims found that it lacked subject matter jurisdiction over plaintiffs' complaint due to plaintiffs' failure to exhaust their administrative remedies. *Id.* at 185.[3] "[T]he statutory provision mandating exhaustion contained in 7 U.S.C. § 6912(e) is explicit. Congress' intent in enacting the FCIA was to require Plaintiffs to exhaust all administrative remedies before bringing suit." *Id.* at 184. "[T]he various exceptions to exhaustion urged by the plaintiffs do not apply where, as here, a clear statutory exhaustion requirement exists". *Id.* Due to its conclusion that it lacked subject matter jurisdiction, the court dismissed plaintiffs' complaint. *Id.* at 187.

On June 14, 2004, Plaintiffs filed suit in United States District Court for the Southern District of Iowa. Plaintiffs asserted the same two causes of action asserted in the Court of Federal Claims: breach of contract (count one), and unjust enrichment (count two). Plaintiffs contend that the manner of Defendants' implementation of Amendments 1 and 3, by a "take it or leave it" proposition, was a non-negotiable demand and unlawful threat to refuse to reinsure any crop insurance policies. Plaintiffs maintain that as a result of Defendants' unlawful acts, they have not received the CAT fees to which they are contractually entitled under the SRA, claiming that damages resulting from the deprivation of CAT administrative fees exceeds $61,600,000.

On August 23, 2004, Plaintiffs filed a Motion for Partial Summary Judgment, seeking summary judgment only as to Defendants' liability for the alleged breaches of contract. Plaintiffs assert that the undisputed facts in this matter demonstrate that Defendants have breached the SRA, the contract underlying this dispute. Plaintiffs claim that the breaches resulted from ARPA and AREERA, enactments that changed material provisions in the SRA regarding the compensation to be paid to or retained by the insurers. Plaintiffs assert that Defendants did not give written notice to any insurer that it was terminating the 1998 SRA in any of the discreet reinsurance years from July 1, 1998, through June 30, 2003. Plaintiffs claim that as a result, under the SRA's explicit terms, the contract between the Defendants and each insurer automatically renewed and was in effect during each of these years.

Plaintiffs argue that the "take it or leave it" manner of implementing the amendments breached the SRA in two respects. First, Plaintiffs assert that 7 U.S.C. § 1508(b) "old" paragraph (5), which

---

**3.** As an additional basis for finding it lacked jurisdiction, the Court of Federal Claims found that 7 U.S.C. § 1506 granted the district courts exclusive jurisdiction over claims against the United States alleging breach of an SRA resulting from actions of the FCIC. *Ace Property*, 60 Fed.Cl. at 185.

granted the insurers the right to retain certain CAT administrative fees, was replaced with "new" paragraph (5), which removed the compensation from insurers; Plaintiffs also contend that a new paragraph (11) was added to 7 U.S.C. § 1508(b), which Plaintiffs argue had the effect of reducing the level of certain CAT loss adjustment expenses payable to the insurers from approximately fourteen percent to eleven percent. Second, Plaintiffs argue that Defendants' implementation of ARPA further breached the SRA by reducing the CAT loss adjustment expenses from eleven percent to eight percent. Plaintiffs assert that Congress, in enacting AREERA and ARPA, caused the FCIC to alter the terms of the SRA, thereby breaching its contract with the insurers. Plaintiffs contend that the undisputed facts and law also demonstrate that Defendants have no valid defense to their claims. Plaintiffs request that the Court enter judgment in their favor and against Defendants on the issue of liability and hold further proceedings to determine the extent of damages caused by Defendants' alleged breach.

On September 16, 2004, Defendants filed a Motion to Dismiss, or Alternatively, Motion for Summary Judgment. Defendants argue that this Court lacks jurisdiction to entertain Plaintiffs' Complaint because Plaintiffs failed to exhaust statutory mandatory administrative remedies. Alternatively, Defendants argue that the Government is entitled to summary judgment in its favor because the Government did not breach the SRA contracts, nor was there any unjust enrichment.

## APPLICABLE LAW AND DISCUSSION

### I. Defendants' Motion to Dismiss

Defendants assert that Plaintiffs have failed to exhaust the requisite administrative remedies.

If the company believes that the Corporation has taken an action that is not in accordance with the provisions of the Standard Reinsurance Agreement or any reinsurance agreement with FCIC, except compliance issues, it may request the Deputy Administrator of Insurance Services to make a final administrative determination addressing the disputed action. The Deputy Administrator of Insurance Services will render the final administrative determination of the Corporation with respect to the applicable actions. *All requests for a final administrative determination must be in writing and submitted within 45 days after receipt after the disputed action.*

7 C.F.R. § 400.169(a) (emphasis added). A dissatisfied party can then appeal the Deputy Administrator's final administrative determination to the Board of Contract Appeals. "Appealable final administrative determinations of the Corporation under paragraph (a) or (b) of this section may be appealed to the Board of Contract Appeals in accordance with the provisions of subtitle A, part 24 of title 7 of the Code of Federal Regulations." 7 C.F.R. § 400.169(d).

Notwithstanding any other provision of law, a person *shall* exhaust all administrative appeal procedures established by the Secretary or required by law *before* the person may bring an action in a court of competent jurisdiction against—

(1) the Secretary;

(2) the Department; or

(3) an agency, office, officer, or employee of the Department.

7 U.S.C. § 6912(e) (emphasis added).

Amendments 1 and 3 to the SRA, which constitute the disputed actions, were issued on June 30, 1998, and June 30, 2000, respectively. On May 11, 2004, Plaintiffs requested that the FCIC render a final administrative determination under 7

C.F.R. § 400.169 regarding the alleged breach of contract claims. By letter dated June 9, 2004, David Hatch, acting Deputy Administrator of the Insurance Services, an office within the Risk Management Agency of the USDA, stated that the FCIC was not in a position to grant Plaintiffs' request for a final administrative determination because Plaintiffs' May 11, 2004, letter was submitted long after the period for submitting a request for final administrative determination set forth in 7 C.F.R. § 400.169(a) had expired.

Plaintiffs asserts that § 6912(e) is not jurisdictional, and thus a failure to exhaust under that statute does not deprive this Court of jurisdiction. Defendants maintain that the exhaustion requirement in § 6912(e) is a jurisdictional prerequisite and thus a bar to Plaintiffs' action. If § 6912(e) is jurisdictional, exhaustion of administrative remedies must occur before the case can be brought in United States District Court. If § 6912(e) is not jurisdictional, the Court can determine whether a failure to exhaust administrative remedies may be excused by considering exceptions to the exhaustion requirement.

"Where Congress specifically mandates, exhaustion is required." *McCarthy v. Madigan,* 503 U.S. 140, 144, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992). "Exhaustion [of administrative remedies] is required because it serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency." *Id.* at 145, 112 S.Ct. 1081.

> As to the first of these purposes, the exhaustion doctrine recognizes the notion, grounded in deference to Congress' delegation of authority to coordinate branches of Government, that agencies, not the courts, ought to have primary responsibility for the programs that Congress has charged them to administer. Exhaustion concerns apply with particular force when the action under

review involves exercise of the agency's discretionary power or when the agency proceedings in question allow the agency to apply its special expertise. *McKart v. United States,* 395 U.S. 185, 194, 89 S.Ct. 1657, 1662, 23 L.Ed.2d 194 (1969). *See also Bowen v. City of New York,* 476 U.S. 467, 484, 106 S.Ct. 2022, 2032, 90 L.Ed.2d 462 (1986). The exhaustion doctrine also acknowledges the common-sense notion of dispute resolution that an agency ought to have an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court. Correlatively, exhaustion principles apply with special force when "frequent and deliberate flouting of administrative processes" could weaken an agency's effectiveness by encouraging disregard of its procedures. As to the second of the purposes, exhaustion promotes judicial efficiency in at least two ways. When an agency has the opportunity to correct its own errors, a judicial controversy may well be mooted, or at least piecemeal appeals may be avoided. *See, e.g., Parisi v. Davidson,* 405 U.S. 34, 37, 92 S.Ct. 815, 817, 31 L.Ed.2d 17 (1972); *McKart v. United States,* 395 U.S. at 195, 89 S.Ct. at 1663. And even where a controversy survives administrative review, exhaustion of the administrative procedure may produce a useful record for subsequent judicial consideration, especially in a complex or technical factual context.

*Id.* at 145–146, 112 S.Ct. 1081.

Some courts have found that 7 U.S.C. § 6912(e) is not jurisdictional in nature. 7 U.S.C. § 6912(e) does not limit the district court's subject matter jurisdiction over the plaintiffs' claims. Nothing in § 6912(e) mentions, defines, or limits federal jurisdiction. Instead, § 6912(e)'s requirement that "a person shall exhaust all administrative appeal procedures established by the Secretary or required by law before the person may

bring an action in a court of competent jurisdiction ..." is similar to the language which, in *Anderson* and *Rumbles,* we held was merely a codification of the exhaustion requirement.

Arguing for a contrary result, the Secretary relies upon the Second Circuit's decision in *Bastek v. Federal Crop Insurance Corporation,* 145 F.3d 90 (2d Cir.1998), holding that the statutory exhaustion requirement of 7 U.S.C. § 6912(e) may not be waived by the court. The court in *Bastek* based its analysis upon a determination that the exhaustion requirement of § 6912(e) was a statutory requirement, as opposed to one which had been "judicially-developed." *Id.* at 94–95. We recognized in *Anderson, Rumbles,* and similar cases, however, that not all statutory exhaustion requirements are created equal. Only statutory exhaustion requirements containing "sweeping and direct" language deprive a federal court of jurisdiction. *Anderson,* 230 F.3d at 1162; *Rumbles,* 182 F.3d at 1067. Section 6912(e) contains no such language.

*McBride Cotton and Cattle Corp. v. Veneman,* 290 F.3d 973, 980 (9th Cir.2002) (concluding that the plaintiffs' failure to exhaust the administrative remedies required by § 6912(e) did not deprive the district court of subject matter jurisdiction); *see also Rain & Hail Ins. Service, Inc. v. Federal Crop Ins. Corp.,* 229 F.Supp.2d 710, 714 (S.D.Tex.2002) (recognizing Ninth Circuit's holding in *McBride Cotton* ); *Farmers Alliance Mut. Ins. Co. v. Federal Crop Ins. Corp.,* 2001 WL 30443, *1 n. 1 (D.Kan.2001) ("The failure

of the plaintiff to exhaust [§ 6912(e) ] administrative remedies is not a jurisdictional matter."); *In re Cottrell,* 213 B.R. 33, 37 (M.D.Ala.1997) (declining to accept *Calhoun*'s determination that § 6912(e) imposes a jurisdictional prerequisite to filing suit).

In *Bastek v. Federal Crop Ins. Corp.,* the Second Circuit found that the exhaustion requirement of § 6912(e) *was* jurisdictional.

[T]he statutory provision mandating exhaustion contained in 7 U.S.C. § 6912(e) is explicit. Indeed, as one court has observed, "[i]t is hard to imagine more direct and explicit language requiring that a plaintiff suing the Department of Agriculture, its agencies, or employees, must first turn to any administrative avenues before beginning a lawsuit." *Gleichman v. United States Dep't of Agric.,* 896 F.Supp. 42, 44 (D.Me.1995). There can be little doubt that Congress's intent, in enacting this statute, was to require plaintiffs to exhaust all administrative remedies before bringing suit in federal court.

*Bastek v. Federal Crop Ins. Corp.,* 145 F.3d 90, 94–95 (2nd Cir.1998); *see also Beharry v. Ashcroft,* 329 F.3d 51, 58 (2nd Cir.2003) (finding § 6912(e) exhaustion was jurisdictional in nature); *Gold Dollar Warehouse, Inc. v. Glickman,* 211 F.3d 93, 94–95 (4th Cir.2000) (holding that the plaintiffs were required to complete their administrative appeal pursuant to 7 U.S.C. § 6912(e) before bringing two of their claims in federal court, and therefore the district court lacked subject matter jurisdiction over those claims).[4]

---

4. Defendants cite to *Kleissler v. United States Forest Serv.,* 183 F.3d 196 (3rd Cir.1999) for the proposition that the exhaustion requirement in § 6912(e) is jurisdictional. However, the *Kleissler* court never explicitly reached that determination. The court found that "the plain language of the applicable statutes and Code of Federal Regulations precludes an

objector to a forest management project from bringing a claim to federal court without first exhausting all administrative remedies." *Kleissler,* 183 F.3d at 207. The court found the district court properly dismissed the claims for which the administrative remedies had not been exhausted. *Id.* There is no

District courts in other circuits have also found that § 6912(e) exhaustion is jurisdictional. *See Gilmer–Glenville Ltd. Partnership v. Farmers Home Admin.*, 102 F.Supp.2d 791, 794 (N.D.Ohio 2000) ("[T]he failure to exhaust administrative remedies in this context is not an affirmative defense, but rather a jurisdictional requirement to filing suit in federal court."); *Utah Shared Access Alliance v. Wagner*, 98 F.Supp.2d 1323, 1333 (D.Utah 2000) ("Plaintiffs' failure to exhaust existing administrative remedies [under 7 U.S.C. § 6912(e)] deprives this court of competent subject matter jurisdiction."); *Bentley v. Glickman*, 234 B.R. 12, 19 (N.D.N.Y.1999) (citing *Bastek* and finding that the plaintiff's failure to pursue administrative remedies warranted summary judgment for the defendants); *Calhoun v. USDA Farm Service Agency*, 920 F.Supp. 696, 702 (N.D.Miss.1996) ("[7 U.S.C. § 6912(e)] imposes upon the plaintiff a jurisdictional prerequisite to the filing of suit against FSA.").

Plaintiffs cite to *American Growers, Ins. Co. v. Federal Crop Ins. Corp.*, 210 F.Supp.2d 1088 (S.D.Iowa 2002), to support their assertion that the Southern District of Iowa has previously found § 6912(e) to be nonjurisdictional. In *American Growers*, the plaintiffs were attempting to circumvent what happened at the administrative level by bringing suit in district court, not as an appeal of the administrative decision, but rather as an original action. *American Growers*, 210 F.Supp.2d at 1092. Chief Judge Longstaff held that the exhaustion requirement found in § 6912(e) did not conflict with the grant of exclusive original jurisdiction to the United States district courts regarding matters brought against the FCIC. *Id.*

"This Court's original jurisdiction is not divested by the administrative exhaustion requirements, and the two statutes are not in conflict." *Id.* (citing *Weinberger*, 422 U.S. at 757, 95 S.Ct. 2457). Chief Judge Longstaff went on to find that "[w]hen read together, sections 6912 and 1506 dictate that American Growers had to go through the administrative process, thereby exhausting their remedies, before filing in this Court. Having completed that process, American Growers may not circumvent what happened at the administrative level." *Id.* Since (1) the *American Growers* case involved the nature of this Court's review after the administrative process had been exhausted, and (2) the Court noted American Growers had to go through the administrative process, the language from that case has been taken out of context and misapplied on the jurisdictional issue now before the Court.

■ The Supreme Court has said that an exhaustion statute must contain "sweeping and direct" language in order for exhaustion of administrative remedies to be jurisdictional in nature. In holding that the exhaustion requirement contained 42 U.S.C. § 405(h) was jurisdictional, the Supreme Court in *Weinberger v. Salfi* stated that the statute contained sweeping and direct language which made it clear that the statute was more than a codified requirement of administrative exhaustion. *Weinberger v. Salfi*, 422 U.S. 749, 757, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975). The "sweeping and direct" language read as follows:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in con-

indication in the court's opinion that the district court dismissed these claims on a jurisdictional basis; rather the Court proceeded beyond the level of the jurisdictional inquiry

to dismiss the claims pursuant to a summary judgment motion that raised exhaustion as a reason for dismissal. *Id.* at 200.

troversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow. Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business, or, if he does not reside or have his principal place of business within any such judicial district, in the United States District Court for the District of Columbia.

42 U.S.C. § 405(g). 42 U.S.C. § 405(h) provides,

The findings and decision of the Commissioner of Social Security after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.

42 U.S.C. § 405(h). In reaching its conclusion that the exhaustion requirement in § 405(h) was jurisdictional, the Supreme Court found,

[A] "final decision" is a statutorily specified jurisdictional prerequisite. The requirement is, therefore, as we have previously noted, something more than simply a codification of the judicially developed doctrine of exhaustion, and may not be dispensed with merely by a judicial conclusion of futility such as that made by the District Court here.

*Weinberger,* 422 U.S. at 766, 95 S.Ct. 2457 ("We interpret the first requirement ... to be central to the requisite grant of subject-matter jurisdiction—the statute empowers

district courts to review a particular type of decision by the Secretary, that type being those which are 'final' and 'made after a hearing.' ").

While the existence of an administrative remedy automatically triggers a non-jurisdictional exhaustion inquiry, jurisdictional exhaustion requires much more. In order to mandate exhaustion, a statute must contain " '[s]weeping and direct' statutory language indicating that there is no federal jurisdiction prior to exhaustion, or the exhaustion requirement is treated as an element of the underlying claim."

*Avocados Plus Inc. v. Veneman,* 370 F.3d 1243, 1248 (D.C.Cir.2004) (quoting *Weinberger,* 422 U.S. at 757, 95 S.Ct. 2457; 2 Pierce, Administrative Law Treatise § 15.3; at 986). What has been found to constitute "sweeping and direct" language in the context of other statutes codifying administrative exhaustion is insightful.

Courts have routinely found that exhaustion of administrative remedies under 42 U.S.C. § 1997e(a) is not jurisdictional. 42 U.S.C. § 1997e(a) states, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "Because § 1997e(a) does not contain this sort of 'sweeping and direct' language, every circuit court that has considered the issue has found that the [Prison Litigation Reform Act] exhaustion requirement is not jurisdictional." *Hoover v. West,* 93 Fed.Appx. 177, 180, 2004 WL 309338, *2 (10th Cir. 2004); *see also Steele v. Federal Bureau of Prisons,* 355 F.3d 1204, 1208 (10th Cir. 2003) (finding § 1997e(a) is not jurisdictional); *Chelette v. Harris,* 229 F.3d 684, 687 (8th Cir.2000) ("The language of sec-

tion 1997e(a) does not contain the sort of 'sweeping and direct' language necessary to impose a jurisdictional requirement."); *Underwood v. Wilson,* 151 F.3d 292, 294 (5th Cir.1998) (§ 1997e(a) contains no sweeping and direct language barring jurisdiction); *Wright v. Morris,* 111 F.3d 414, 421 (6th Cir.1997) (finding § 1997e(a) "contains neither the sweeping and direct language of [the statute at issue in *Weinberger* ] nor that statute's explicit bar to district court jurisdiction."); *Ali v. District of Columbia,* 278 F.3d 1, 5–6 (D.C.Cir. 2002) (holding that the PLRA's exhaustion requirement simply governed the timing of the action and does not contain the type of "sweeping and direct" language that would indicate a jurisdictional bar).

The Ninth Circuit similarly found that exhaustion requirements established by Interior Department regulations were not jurisdictional in nature.

> 43 C.F.R. § 4.21(c) (2000) provides that, with limited exceptions, "[n]o decision which at the time of its rendition is subject to appeal to the Director or an Appeals Board shall be considered final so as to be agency action subject to judicial review under 5 U.S.C. § 704 . . . ." This is not "sweeping and direct language that goes beyond a requirement that only exhausted claims be brought."

*Anderson v. Babbitt,* 230 F.3d 1158, 1162 (9th Cir.2000) (quoting *Rumbles v. Hill,* 182 F.3d 1064, 1067 (9th Cir.1999)).

Another statute that is frequently discussed with regard to whether exhaustion is jurisdictional is 8 U.S.C. § 1252(d)(1). "A court may review a final order of removal **only if** . . . the alien has exhausted all *administrative remedies available to the* alien as of right . . ." 8 U.S.C. § 1252(d)(1) (emphasis added). The Ninth Circuit found that this constituted sweeping and

direct language, going beyond a mere codification of the exhaustion requirement, stating that the statute "is addressed specifically to the court and contains broad and clear language directing us *only* to review a petition *if* the petitioner has exhausted *all* remedies available to him or her." *Barron v. Ashcroft,* 358 F.3d 674, 677 (9th Cir.2004); *see also Sayyah v. Farquharson,* 382 F.3d 20, 24 (1st Cir. 2004) ("The exhaustion bar contained in [8 U.S.C. § 1252(d)(1)] is jurisdictional."); *Enriquez–Alvarado v. Ashcroft,* 371 F.3d 246, 248 (5th Cir.2004) (exhaustion of § 1252(d)(1) is a jurisdictional prerequisite); *Bhiski v. Ashcroft,* 373 F.3d 363, 367 (3rd Cir.2004) (same); *Sundar v. I.N.S.,* 328 F.3d 1320, 1323 (11th Cir.2003) (same).

*In re Sugar Beet Crop. Ins. Litig.* provides support for Defendant's assertion that § 6912(e) is indeed jurisdictional. The sugar beet litigation stemmed from an October 2000 frost that resulted in severe freeze damage to the crops of several sugar beet growers located in Minnesota. *In re 2000 Sugar Beet Crop Ins. Litig.,* 228 F.Supp.2d 999, 1001 (D.Minn.2002). The growers brought suit in district court, claiming that the insurance companies wrongfully refused to pay insurance claims pertaining to the freeze damaged crops. *Id.* The insurers, whose insurance contracts with the sugar beet growers were reinsured through the FCIC, impleaded the FCIC as a third-party defendant seeking indemnification for any damages payable to the growers.[5] *Id.* The FCIC filed a motion to dismiss, arguing that the insurance companies failed to exhaust their administrative remedies, thereby barring federal jurisdiction. *Id.* at 1002. The district court found that 7 U.S.C. § 6912(e) was jurisdictional.

---

**5.** The insurers alleged that the FCIC, via a Manager's Bulletin, had unlawfully expanded

coverage under the insurance contract between the insurers and the growers.

The statutory language in 7 U.S.C. § 6912(e) is distinguishable from language the Eighth Circuit described as mere codification. In *Chelette*, the Court found the PLRA's language stating "no action shall be brought . . ., until such administrative remedies as are available are exhausted," did not create a jurisdictional bar. In enacting 7 U.S.C. § 6912(e), by contrast, Congress made exhaustion an affirmative requirement, providing that "a person shall exhaust" administrative remedies before initiating litigation against the FCIC. "[W]hen Congress enacted section 6912(e), it did so against the backdrop of principles of collateral estoppel, res judicata, and administrative estoppel." *See Am. Growers Ins. Co. v. Fed. Crop Ins.*, 210 F.Supp.2d 1088, 1092. A waiver of exhaustion would divest the USDA of its prerogative to review determinations and pronouncements prior to judicial action. It would remove the FCIC's ability to create a factual record, and render the agency's crop insurance expertise moot. Under these conditions, this Court finds the requirement jurisdictional.

*Id.* at 1004. The court found that the insurers' failure to comply with the exhaustion requirement of § 6912(e) deprived the court of jurisdiction and granted FCIC's motion to dismiss.

The insurers then appealed only the dismissal between the insurers and the FCIC. On appeal in *National Crop Ins. Servs., Inc. v. Federal Crop Ins. Corp.*, 351 F.3d 346 (8th Cir.2003), the Eighth Circuit read 7 C.F.R. § 400.169 to require administrative appeals when a dispute was between an insurer and the FCIC and pertained to coverage under a *reinsurance* contract. *National Crop.*, 351 F.3d at 349. The insurers were alleging that coverage had been unlawfully expanded under the *insurance* contract between the *insurers and the growers. Id.* The appellate court found

that because the dispute pertained to coverage under the insurance, and not reinsurance, contract, statutory exhaustion was not required. *Id.* Thus, contrary to Plaintiffs' contention, the Eighth Circuit was not reversing the district court's determination that § 6912(e) was jurisdictional where applicable; in fact, the Eighth Circuit did not express any opinion on the district court's conclusion that § 6912(e) was jurisdictional; it only indicated that the district court had erred in finding that exhaustion applied to disputes pertaining to insurance contracts between growers and insurers.

■ Finally, the statute uses the term "shall" in describing what a party must do prior to bringing suit in district court. The term "shall" is mandatory in nature. *Lopez v. Davis*, 531 U.S. 230, 231, 121 S.Ct. 714, 148 L.Ed.2d 635 (2001) (the term "may" is permissive, in contrast with the term "shall", which is mandatory); *Anderson v. Yungkau*, 329 U.S. 482, 485, 67 S.Ct. 428, 91 L.Ed. 436 (1947) (noting "may" is permissive and "shall" is mandatory); *Primary Care Investors, Seven, Inc. v. PHP Healthcare Corp.*, 986 F.2d 1208, 1213 (8th Cir.1993) ("may" is permissive, "shall" is mandatory). The use of the mandatory term "shall" in the statutory language provides further support for the conclusion that a person must exhaust all administrative appeal procedures before that person will be allowed bring an action in district court.

■ Although both district and appellate courts have reached contrary conclusions regarding the nature of § 6912(e) exhaustion, the weight of authority indicates that § 6912(e) is jurisdictional nature. This Court concludes that § 6912(e) exhaustion is jurisdictional.

Having concluded the Court lacks jurisdiction over the Plaintiffs' claims, the matter is determined without the need to

proceed further on the merits or other procedural issues. However, as the nature of the jurisdictional issue and the arguments of the parties closely track with the further question of exhaustion, the Court notes that even if the Court had concluded that § 6912(e) was not jurisdictional, "[a]ll administrative appeals established by the Secretary of Agriculture must be exhausted before a lawsuit may be brought against an agency of the USDA, such as the FCIC." *National Crop Ins.*, 351 F.3d at 349 (citing 7 U.S.C. § 6912(e)). Plaintiffs have failed to exhaust their administrative remedies as required by 7 U.S.C. § 6912(e), and Plaintiffs' failure to exhaust cannot be excused under any of the recognized exceptions to statutory exhaustion which Plaintiffs urge.[6]

## II. Plaintiffs' Motion for Partial Summary Judgment

Plaintiffs contend that Defendants' actions constitute a prima facie breach of contract and request that the Court grant summary judgment in their favor. For

---

**6.** The Eighth Circuit has recognized three limited exceptions to statutory exhaustion. These occur where the plaintiff "(1) raises a colorable constitutional claim collateral to [its] substantive claim of entitlement; (2) shows that irreparable harm would result from exhaustion; and (3) shows that the purposes of exhaustion would not be served by requiring further administrative procedures." *Anderson v. Sullivan*, 959 F.2d 690, 693 (8th Cir.1992); *see also Thorbus v. Bowen*, 848 F.2d 901, 903 (8th Cir.1988) (citing *Mathews v. Eldridge*, 424 U.S. 319, 329–31, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Other courts have held that waiver of exhaustion is appropriate if the claims are purely legal questions involving no agency fact-finding. *See Kuster v. Veneman*, 226 F.Supp.2d 1190, 1192 (D.N.D.2002) (citing *Wiley v. Glickman*, 1999 WL 33283314 at *2 (D.N.D.1999)). Plaintiffs assert that the exceptions applicable to the facts of this case are that administrative remedies or procedures would be futile and that purely legal questions exist that require no agency fact-finding.

Plaintiffs claim that administrative remedies are futile because the FCIC cannot take actions that are contrary to federal law, and because the relief sought, compensation for amounts allegedly owed under the 1998 SRA, is prohibited by statute, the FCIC is powerless to provide relief. The claims raised by Plaintiffs are contract claims—whether the manner in which the FCIC implemented the statutory provisions contained in ARPA and AREERA were in accordance with the SRA. The BCA can provide relief for contract claims where necessary. "[T]he agency board is authorized to grant any relief that would be available to a litigant asserting a contract claim in the United States Court of Federal Claims." 41

U.S.C. § 607(d). In addition, the BCA is empowered to award monetary damages. *See, Rain and Hail Ins. Servs. Inc.*, AGBCA No.1999–194–F, 2002 WL 857785 (BCA 2002); *Rain and Hail Ins. Servs. Inc.*, AGBCA No. 97–172–F, 1999 WL 29173 (BCA 1999); *Rain and Hail Ins. Servs. Inc.*, AGBCA No. 97–185–F, 1998 WL 184595 (BCA 1998).

Plaintiffs also allege that an appeal from a final determination of the Deputy Administrator to the USDA Board of Contract Appeals ("BCA") would have been futile because the BCA lacks authority and jurisdiction to hear Plaintiffs' breach of SRA claims. The BCA has jurisdiction to decide an appeal under 7 C.F.R. §§ 24.4(b) and 400.169(a), (c) and (d).

Finally, Plaintiffs contend that the central questions at issue—whether the Government's enactment of ARPA and AREERA breached the terms of the SRA—is a purely legal question that requires no agency fact-finding. The central question at issue is whether the FCIC's conduct in implementing the provisions of ARPA and AREERA breached the terms of the SRA; it is the FCIC's implementation of Amendments 1 and 3, and not Congress' act of passing ARPA and AREERA, that is at issue. Numerous factual issues likely remain in dispute, such as whether the SRA was a continuous contract with terms that did not vary, or a renewable contract with terms that varied from year to year, what type of consideration was given for the contract, and whether the insurers were under duress when they accepted Amendments 1 and 3 or whether they consented to the amendments voluntarily. Clearly such issues are relevant to a determination of Defendants' conduct in implementing Amendments 1 and 3.

the reasons stated above, Plaintiffs' Motion for Partial Summary Judgment must be denied as moot.

## CONCLUSION

Courts are divided regarding whether § 6912(e) is jurisdictional in nature. Given the weight of the authority, and the holdings of the courts located within the Eighth Circuit, this Court concludes that § 6912(e) is jurisdictional. Defendants' motion to dismiss (Clerk's No. 14) must be **granted**, and Defendants' alternative motion for summary judgment is therefore moot (Clerk's No. 14). Plaintiffs' motion for partial summary judgment (Clerk's No. 6) is **denied** as moot.

**IT IS SO ORDERED.**